## Coldren et ux. *v.* Erie Railroad Co., Appellant.

*Negligence—Railroads — Grade crossing — Contributory negligence—Case for jury.*

In an action against a railroad company to recover for the death of a minor son, the case is for the jury and a verdict for the plaintiffs will be sustained, where it appears that the accident took place at a crossing over the defendant's tracks which were approached through a culvert under the tracks of another railroad company; that the only place to obtain a view of defendant's tracks was at a point 60 feet distant before entering the culvert or at a place about ten feet from the defendant's tracks after emerging from the tunnel, and where there was evidence to show that the automatic signal at the crossing did not work.

*Negligence—Railroad crossing accident—Stop, look and listen.*

Where the location of a grade crossing and its unusual surroundings created peculiarly dangerous conditions, the court cannot say, as a matter of law, that travelers over the crossing must stop at any particular place to discharge the duty of stop, look and listen. Under such circumstances the case is for the jury, to determine whether or not the plaintiff has been negligent.

Argued April 16, 1919.   Appeal, No. 16, April T., 1919, by defendant, from judgment of C. P. Venango Co., August T., 1915, No. 83, on verdict for plaintiffs in case of John F. Coldren and Annie E. Coldren v. Erie Railroad

Company.   Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, WILLIAMS and KELLER, JJ.   Affirmed.

Trespass to recover damages for death of plaintiffs' minor son.   Before CRISWELL, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiffs for $878.18 and judgment thereon.   Defendant appealed.

*Errors assigned,* among others, were refusal of defendant's motions for a new trial and for judgment n. o. v.

*James S. Carmichael,* for appellant.—The plaintiff was guilty of contributory negligence: Connerton v. Delaware & Hudson Canal Co., 169 Pa. 339; Penna. R. R. Co. v. Mooney, 126 Pa. 244; Penna. R. R. Co. v. Beale, 73 Pa. 504; Penna. R. R. Co. v. Heilman, 49 Pa. 60; Urias v. Railroad, 152 Pa. 326; Kinter v. Railroad, 204 Pa. 497; Gangawer v. Phila. & Reading R. R. Co., 168 Pa. 265.

*Judson D. Trax,* and with him *William M. Parker,* for appellees.

OPINION BY ORLADY, P. J., July 17, 1919:

The plaintiffs, as parents of Louis LeRoy Coldren, who at the time of his death was seventeen years of age, recovered in the court below a verdict of $878, which the court refused to disturb on a motion for a new trial and a like motion for judgment non obstante veredicto.   The defendant brings this appeal and urges that the deceased boy was guilty of such contributory negligence that the parents are not entitled to recover.   The location of the accident, as shown by the testimony and the exhibits filed present a very unusual situation.   The defendant's railroad between Franklin and Oil City is close to the northwestern bank of the Allegheny river; parallel with and

close to it the Lake Shore and Michigan Southern railroad tracks are laid on a grade about twelve feet above the level of the defendant's tracks. A public road leading from Franklin to Oil City is located between the defendant's tracks and the river, which road the decedent in this case was using in hauling coal to an incinerating furnace, and to reach the furnace was obliged to cross the tracks of the defendant company, and pass through a stone culvert under the tracks of the Lake Shore and Michigan Railroad Company, and then by a private road to the garbage furnace. This road, after passing through the culvert, is at the foot of a hill about 500 feet in height. The decedent was driving a two-horse team hauling a load of coal from Oil City to the garbage furnace. He had made one trip from Oil City, which so far as the evidence shows was his first knowledge of the unusual conditions presented. On his second return from the garbage plant toward Oil City, after passing through the culvert his team was struck on the defendant's grade crossing by a train running backward, when he was so seriously injured that he died soon thereafter.

The opening of the culvert was eight feet wide and eight feet two inches high, which made it necessary for one driving a team to lower his head or bend forward to avoid the eye-beams of the superstructure. On account of the elevation of the Michigan Southern tracks a person approaching the culvert from the side opposite the defendant's tracks, could not hear distinctly, if at all, trains or their signals on the defendant company's tracks, on account of the confusion of sounds produced by the high hill on the one side of the road and the railroad embankment on its other side. At the hillside of the culvert was the usual point for travelers to stop and listen, though they could not see along the line of the defendant's tracks until they would emerge from the culvert's mouth, which was but ten feet from the defendant's tracks, a distance not sufficient to enable a driver if seated on his wagon to see along the line of the tracks until the heads of his

horses would be on the railroad tracks.   On the river side of the crossing there was a danger-signal sign of the defendant and an automatic bell, which under all the evidence was not only unreliable, but grossly misleading. It would not ring when trains were on the circuit, and would ring irregularly without any apparent cause when trains were not on the circuit, and even remain silent when trains were passing over the crossing tracks.   It could be started to ring by any one tapping the upright supporting it without other inducing cause.   These defects had existed for many months, and while repaired at irregular intervals it was so continuously out of working condition as to be regarded by all persons using the highway as entirely unreliable.

The speed of the train at the time of the accident was testified to by different witnesses as from ten to twenty-five miles an hour.   The crossing with its approaches, the road between the hill and the Michigan Southern embankment, the narrow culvert and its nearness to the track made it a specially dangerous one, so that exceptional precautions should have been taken by the defendant company to make it reasonably safe.   A number of witnesses for the plaintiff, who were familiar with the crossing testified that, the customary place of stopping was on the hillside of the culvert, 35 or 40 feet distant from the defendant's track, from which place a driver could not see along the defendant's tracks in either direction, and could judge of the approaching train only by listening or relying upon the automatic signal.   While there was no eyewitness to the accident, the trial judge properly stated the law applicable to such cases.   "Self-preservation is said to be the first law of nature, and the rule has been adopted that where, as in a case of this kind, there was no evidence on that subject, the presumption prevails that the party for his own protection and the protection of his property used due care, that he did stop, look and listen, as the law requires, that being the only safe thing for a person to do before entering upon the track of a railroad

company. You will assume that he was looking out for himself, and using such precautions as were necessary for his own protection. He must not only stop, look and listen, but he must do so at a place where he may see approaching trains."

The principal contention of the defendant is, that the deceased was guilty of contributory negligence in not leaving his team on the hillside of the culvert, or in the culvert and going forward to look along the tracks before entering upon them.

The location of this grade crossing, and its unusual surroundings make it impossible to decide as a matter of law that the decedent should have stopped at any particular place to discharge the duty imposed by our decisions on travelers. The measure of duty urged by the defendant might or might not be the proper one, but that is a question of fact to be determined by a jury under all the evidence. The railroad company certainly did not discharge its duty in affording adequate danger signals of the peculiar and hazardous condition of this crossing. They recognized in a measure, their duty to do so by placing the automatic signal, but it was so inadequate that it was not relied upon by their own employees.

The disputed questions of fact were carefully and fairly submitted to the jury. The verdict was fully warranted by the evidence and the reasonable inference to be drawn therefrom, and the opinion of the court below in refusing defendant's motion for judgment non obstante veredicto is a sufficient answer to the defendant's contention.

The judgment is affirmed.

PORTER and HENDERSON, JJ., dissent.